## Winter's Estate.

*Will—Provision for widow—Executors and administrators.*

Where a testator gives a specified annuity to his wife "or as much more as she may need for her comfort, support and maintenance," the widow will not be barred from receiving her annuity because she made herself personally liable for a loan made out of the moneys of the estate to one of testator's children, which loan was never returned.

Argued Nov. 16, 1904. Appeal, No. 153, Oct. T., 1904, by Elias T. Winter, from decree of O. C. Lancaster Co., Feb. T., 1902, No. 29, making allowance for widow in Estate of Elias Winter, deceased. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Petition for allowance.

SMITH, P. J., filed the following opinion :

The prayer of the petitioner is that the trustee be ordered to pay to her " $250 clear of all deductions, and as much more as the court finds necessary." The petitioner is Amanda Winter, the widow of the decedent, whose will is as follows :

" Item : I give and bequeath to my beloved wife, Amanda, One thousand dollars in cash, and two hundred and fifty dollars yearly, or as much more as she may need for her comfortable support and maintenance, for and during her natural lifetime, also the use, occupancy and control of my real estate, on which I now reside, for and during her natural life, or as long as she may wish to occupy the same, if at any time she may elect to remove from said place, then I hereby authorize my said hereinafter named executor, with her consent to sell the same, and give, execute and deliver valid Deed or Deeds, for the conveyance of said real estate, in as legal a manner as I could if living."

The $1,000 has been paid to her. Just as explicit as that is the bequest of " two hundred and fifty dollars yearly, or as much more as she may need for her comfortable support and maintenance." The whole estate may be necessary for her comfortable support and maintenance, and, if so, unless she has done that which bars her enjoyment of it, for that must it be used. There have been disclosures connected with the disposition, and may be dissipation, of certain funds of this estate which cannot fail to excite a sympathy for the petitioner. It appears as if she, a feeble woman, eighty years old, had fallen an easy prey to the avarice and cunning of those who owed her protection and filial affection. Notwithstanding the testator provided amply for her support, the testimony shows that she received but $147 in the last three years.

In addition to the bequests referred to, the testator also gave to her the " use, occupancy and control of my real estate, on which I now reside, for and during her natural life, or as long as she may wish to occupy the same, if at any time she may elect to remove from said place, then I hereby authorize my said hereinafter named executor, with her consent to sell the same." This real estate was sold April 1, 1895. It is claimed that it was worth $150 a year to her. It sold for $2,500. We

will assume that the net income therefrom annually amounts to $100.

We do not understand that the present trustee is opposed to paying what is necessary for the support of the petitioner, but with a proper precaution asks that his authority be defined. His answer and the testimony show that on December 31, 1901, the executor, as testamentary trustee, lent $1,650 to Francis Winter, who will be entitled to the income of a fund after the death of his mother, the petitioner, and took his note therefor; that Amanda Winter, Emma Stoneroad and A. J. Winter, the widow and two of the remaindermen, became the sureties for the payment of this note; that on April 1, 1902, he lent Aldus J. Winter $100, for which he took his note; that under his signature appears "I hereby guarantee the payment of the interest on the above note," signed "Amanda Winter;" that on the same day he lent the same Aldus J. Winter $1,382.88, and took his note; that on the same day Aldus J. Winter acknowledged to have received from Amanda Winter $291.26, "the interest on the within note to April 1, 1902, leaving a balance due April 1, 1902, on said note of $1,091.62;" that on the same day Amanda Winter gave a receipt to George W. Eaby, the then trustee, for a like sum of $291.28, with the following appearing therein, "interest on the above note in full to date and I hereby become security for the payment of the interest $291.26 on the above note;" that on the same day he lent to Emma Stoneroad $100 on her note; that on the same piece of paper over the signature of Amanda Winter appears, "I hereby guarantee the payment of the interest on the above note;" that on April 10, 1902, he lent Emma Stoneroad on her note $650; that on the same day Emma Stoneroad acknowledged to have received of Amanda Winter $32.50, the interest on the note; and that on the same day Amanda Winter gave a receipt to the trustee for the same amount, and we find embodied in this receipt, "I hereby become security for the payment of the interest on the above note." Thus we find the life tenant, with two of the remaindermen for $1,650, and guarantor for the payment of interest at five per cent on other notes of remainderman, amounting to $1.941.62.

Such investments by a trustee cannot be too severely con-

demned, and that they were acceptable to a succeeding trustee is a surprise. Having accepted them, it was his duty to collect the interest. from the makers of the notes. If this was not possible and the petitioner was obliged to pay it, there was yet left for her annually $170.42, independent of the reserve. "As much more as she may need for her comfortable support and maintenance" is designated the reserve. We have estimated on the "two hundred and fifty dollars yearly" and the income of the proceeds of the real estate. While the testator did not specifically give, in the event of the sale of the real estate, the income of the proceeds thereof to his widow, such, nevertheless, is a fair interpretation of his intention. But it is not a material question, as the whole estate is subject to her needs.

There was owing the petitioner for three years ending April 1, 1904, $1,050. Deducting from this the cash paid her, $147, interest claimed to April 1, 1904, $179.58, amounts receipted for April 1, 1902, and April 10, 1902, $291.26 and $35.50 respectively, will leave $396.66. From this we will deduct $96.66, to cover commissions and costs, fixing as the net balance owing her at that time $300. While it manifestly was the intention of the testator to provide sufficiently for the comfort and maintenance of his widow, his words cannot be interpreted to mean a license to fritter away his estate, even though instigated by remaindermen; neither can they be understood as permitting his widow to suffer for the necessaries of life by reason of an improvident act.

It is now ordered and decreed that the trustee pay to Amanda Winter $300 as of April 1, 1904.

*Error assigned* was the decree of the court.

*T. B. Holman,* for appellant.—If a cestui que trust concurs in a breach of trust, he is forever estopped from proceeding against the trustee by the consequences of the act: Lewin on Trust, vol. 3, page 918; Cooper's Est., 30 W. N. C. 285; Abbott v. Reeves, 49 Pa. 494.

*H. Frank Eshleman,* for appellee.—The general rule is that a trustee has no power to make any contract with his cestui que trust, which is not fair and advantageous to her, and in

which a full and adequate value is not received by her: St. Paul Trust Co. v. Strong, 85 Minn. 1 (88 N. W. Repr. 256); Smith v. Howlett, 29 N. Y. App. Div. 182 (51 N. Y. Supp. 910); Nichols's App., 157 Mass. 20 (31 N. E. Repr. 683).

A trustee will not be allowed to satisfy a private claim which he holds against his cestui que trust out of her interest in the fund, whether incurred before or after his appointment.

A trustee will not be permitted to deprive himself of a power conferred upon him for the benefit of the trust, or so to fetter its exercise by himself, or his successor, as to defeat the purpose of the trust: Hickok v. Still, 168 Pa. 155.

The court will see to it that no act of the trustee shall thwart or annul the will of the donor: Williams's App., 73 Pa. 249; Bacon v. Bacon, 55 Vt. 243.

The trust established for Amanda Winters has the effect of a spendthrift's trust, as regards all the parties beneficially interested in the will, and neither the trustee nor the remaindermen can jeopardize the cestui que trust's interests or make the same liable, by any obligation they induce her to sign; while if she contracted liability to a stranger she might jeopardize her interests, by reason of this trust in the latter instance, not fully measuring up to a spendthrift's trust against strangers: Smith v. Savidge, 4 Penny. 320.

PER CURIAM, December 12, 1904:

The main facts of this case are set forth in the opinion filed by the learned judge of the orphans' court, and need not be recited here. We are asked to hold that the appellee "has placed herself outside the pale of the provisions of her husband's will until she returns to the estate the amount of money she has made herself liable for." Whether or not this would be so if the money had been loaned to her is a point we are not required to decide. It was not loaned to her, and whilst there is no affirmative evidence that a fraud was practiced upon her, neither is there any affirmative evidence of the fairness of the transactions or that they were advantageous to her in any way, or were for her benefit, or were even supposed to be. Nor is there any evidence whatever that the loans were made at her request or even that she executed the collateral obligations upon which it is sought to hold her liable as if she

were the principal debtor. But passing the objection that proof of execution is lacking, there remains the objection that there is no satisfactory evidence that it is necessary, in order to secure repayment of the loans, to withhold this small allowance for her support. . It was the manifest intention of the testator to make her the first and chief object of his bounty. She was to have $250 yearly unconditionally " or as much more as she may need for her comfortable support and maintenance." Other provisions of the will leave no room for doubt that his whole estate, if necessary, was intended to be made available for that purpose. As the learned judge of the orphans' court well says : " The whole estate may be necessary for her comfortable support and maintenance, and if so, unless she has done that which bars her enjoyment of it, for that it must be used." He further says in conclusion : " While it manifestly was the intention of the testator to provide sufficiently for the comfort and maintenance of his widow, his words cannot be interpreted to mean a license to fritter away his estate, even though instigated by remaindermen ; neither can they be understood as permitting his wife to suffer for the necessaries of life by reason of an improvident act." We are not prepared to dissent from this interpretation of the will ; but, even if it be conceded that the latter branch of the proposition is subject to qualification, the decree was clearly right under the evidence. To warrant the orphans' court, which within its jurisdiction is a court of equity, to make a decree which would deprive her of that comfortable support and maintenance which the testator manifestly intended she should have out of his estate, and thus compel her to rely for the few remaining days of her life upon public or private charity, the evidence that she has forfeited her right either absolutely or temporarily, ought to be clear and satisfactory in every particular. We think it fails to come up to that standard.

Decree affirmed at the costs of the appellant.